E-FILED
Tuesday, 14 September, 2021  09:56:03 AM
Clerk, U.S. District Court, ILCD

United States District Court for the Central District of Illinois

Brian Hargarten
_Plaintiff_

V.

Illinois Department of Corrections, Correctional officer Christian Burton, Sergeant Craig Wilson, Counselor Jamie Horton, Warden Teri Kennedy, Warden Emily Ruskin, Warden Leonta Jackson, Administrative Review Board Grievance officer Amy Burle, Administrative Review Board Grievance officer Dave White, Director of Illinois Department of Corrections Rob Jeffreys, Officer John Doe #1, Sergeant John Doe #2, Lueterient John Doe #3, Lueterient John Doe #4, Officer John Doe #5, Officer John Doe #6, Officer John Doe #7, Sergeant John Doe #8, Officer John Doe #9, Lueterient John Doe #10, Lueterient John Doe #11, Officer John Doe #12, Sergeant John Doe #13, Officer John Doe #14, Officer John Doe #15, Officer John Doe #16, Lueterient John Doe #17, Sergeant Jane Doe #1, Sergeant Jane Doe #2, Pontiac Correctional Grievance officer Jane Doe #3, Officer Jane Doe #4, Officer Jane Doe #5

Defendant(s)

Case #

Civil Rights Complaint Pursuant to 42 U.S.C.A. § 1983

Jury Trial Demanded.

Date: 9/10/21

# 1983 Civil Rights Complaint For Damages

1) Now Comes Plaintiff, Brian Hargarten, Pro-Se Pursuant to 42 United States Constitution § 1983 against Defendant's In Support there of States;

2) This Complaint is brought to Redress Violations of Plaintiff's rights Secured under the Eight Amendment of the United States Constitution.

3) This is a Civil Rights Action in which the Plaintiff Seeks Relief for the Defendant's Violation of his Rights Secured By 42 United States Constitution § 1983 and § 1985, and the Eighth Amendment to the United States Constitution.

4) The Claims arise from a Series of Occurrences from August 11th, 2019 Continuing until January 27th, 2020 in which Defendant's, Among other things, Denied Plaintiff Right Secured by the Eight Amendment of the United States Constitution and, were Deliberately Indifferent to objectively Serious risks to Plaintiffs' Health, Safety and well being.

5) Plaintiff is Seeking a declaration from this Court declaring Defendant's actions Unconstitutional, An injunction enjoining Defendants From engaging in actions that Violate Plaintiff's rights and Nominal, Compensatory and Punitive Damages; with Costs.

## • PARTIES INVOLVED •

6) Plaintiff, Brian Hargarten, is a State Prisoner housed at the Lawrence Correctional Center Illinois Department of Corrections in Lawrence County, Illinois. He was/is under the Care, Custody and Control of Defendant's at all times relevant herein.

7) Defendant, Christian Burton, Was a Correctional Officer who was in charge of Plaintiff's Health, Safety and Care while housed in the North Administrative Detention Segregative Unit (here in after refered to as N.A.D.S.U.) at the Pontiac Correctional Center Illinois Department of Corrections (here in after refered to as P.C.C. and I.D.O.C.). He was personally responsible for Plaintiffs Health, Safety and Care while employed at the P.C.C. He is Sued in His individual Capacity For Damages.

8) Defendant, Craig Wilson, was a Sergeant (here in after as Sgt.) and the Acting Official in charge of Plaintiff's Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was Personally responsible for over Seeing officials under his Control while employed at P.C.C. He is Sued in His individual Capacity For Damages.

9) Defendant, Jamie Horton, was a Counselor who was in charge of Plaintiff's Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. She was personally responsible for Plaintiff's Health, Safety and Care while employed at P.C.C. She is Sued in her individual Capacity for Damages

10) Defendant, Teri Kennedy, was the Chief Administrative Officer (here in after "C.A.O.") Warden at P.C.C. She was personally responsible for the Health, Safety and Care of Plaintiff at all times relevant here in. She was personally responsible for the over-all Care of Plaintiff. She is Sued in her individual Capacity for Damages.

11) Defendant, Emily Ruskin, was the C.A.O. Warden at P.C.C. She was personally responsible for the Health, Safety and Care of Plaintiff at all times relevant here in. She was personally responsible for the over-all Care of Plaintiff. She is Sued in her individual Capacity for Damages

12) Defendant, Leonta Jackson. Was the C.A.O. Warden at P.C.C. He was personally responsible for the Health, Safety and care of Plaintiff at all times relevant here in. He was personally responsible for the over-all care of Plaintiff. He is Sued in His individual Capacity for Damages

13) Defendant, Amy Burle Was a Grievance Officer at the Administrative Review Board (Here in after "A.R.B.") Office of Inmate Issues. She was personally responsible for the Health, Safety and Care of Plaintiff at all times relevant here in. She was personally responsible for the over-all care of plaintiff. She is Sued in Her individual Capacity for Damages.

14) Defendant, Dave White, was a Grievance Officer at the A.R.B Office of Inmate Issues. He was personally responsible for the Health, Safety and Care of Plaintiff at all times relevant herein. He was personally responsible for the over-all Care of Plaintiff. He is Sued in His individual Capacity for Damages.

15) Defendant, Rob Jeffreys, was the Acting Director of I.D.O.C. He was personally responsible for the Health, Safety and Care of Plaintiff at all times relevant here in. He was personally responsible for the over-all Care of Plaintiff. He is Sued in His individual Capacity for Damages.

16) Defendant, John Doe #1 A.K.A. Correctional officer (herein after C/o) Bryan, was a Correctional officer who was in charge of Plaintiffs Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for Plaintiffs Health, Safety and care while employed at P.C.C. He is sued in His individual Capacity for Damages.

3 of 72

17) Defendant, John Doe #2 A.K.A. Sgt. Edens, was the acting Official in Charge of Plaintiffs Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for over-seeing officials under His Control while employed at P.C.C. He is Sued in His individual Capacity for Damages.

18) Defendant, John Doe #3, was the acting official in Charge of Plaintiffs Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for over-seeing officials under His Control while employed at P.C.C. He is Sued in His individual Capacity for Damages.

19) Defendant, John Doe #4, Was the acting official in Charge of Plaintiffs Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for over-seeing officials under His Control while employed at P.C.C. He is Sued in His individual Capacity for damages.

20) Defendant, John Doe #5 A.K.A. C/o Lindsey, Was a Correctional Officer who was in charge of Plaintiffs Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for Plaintiff's Health, Safety and Care while employed at P.C.C. He is Sued in His individual Capacity for Damages.

21) Defendant, John Doe #6 A.K.A. C/o Jackson, Was a Correctional Officer who was in charge of Plaintiffs Health, Safety and Care while housed in the NADSU at P.C.C. He was personally responsible for Plaintiffs Health, Safety and Care while employed at P.C.C. He is Sued in His individual Capacity for damages.

22) Defendant, John Doe #7 A.K.A. C/o Montez, Was a Correctional officer who was in charge of Plaintiffs Health, Safety and care while housed in the N.A.D.S.U at P.C.C. He was personally responsible for Plaintiffs Health, Safety and Care while employed at P.C.C. He is Sued in His individual Capacity for damages.

23) Defendant, John Doe #8 A.K.A. Sgt. Drysdale, Was the acting official in Charge of Plaintiffs Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for over-seeing officials under His Control while employed at P.C.C. He is Sued in His individual Capacity for Damages.

24) Defendant, John Doe #9 A.K.A C/o George, Was a Correctional officer who was in Charge of Plaintiffs Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for Plaintiffs Health, Safety and Care while employed at P.C.C. He is Sued in His individual Capacity for damages.

25) Defendant, John Doe #10, was the acting official in charge of Plaintiffs Health, Safety and care while housed in the N.A.D.S.U. at P.C.C. He.

was personally responsible for over-seeing officials under his control while employed at P.C.C. He is Sued in His individual Capacity for damages.

26) Defendant, John Doe #11 A.K.A. Luetenient (Here in after Lt.) Evans, was the acting official in charge of Plaintiff's Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for over-seeing officials under His Control while employed at P.C.C. He is Sued in His individual Capacity for damages.

27) Defendant, John Doe #12. was a Correctional Officer who was in charge of Plaintiff's Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for Plaintiff's Health, Safety and care while employed at P.C.C. He is Sued in His individual Capacity for damages.

28) Defendant, John Doe #13 A.K.A Sgt. Diaz, was the acting official in Charge of Plaintiff's Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for over-seeing officials under His Control while employed at P.C.C. He is Sued in His individual Capacity for damages.

29) Defendant, John Doe #14 A.K.A C/o Bernstein, was a Correctional officer who was in Charge of Plaintiff's Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for Plaintiff's Health, Safety and Care while employed at P.C.C. He is Sued in His individual Capacity For damages.

30) Defendant, John Doe #15, was a Correctional Official who was in Charge of Plaintiff's Health, Safety and care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible For plaintiff's Health, Safety and Care while employed at P.C.C. He is Sued in His individual Capacity for damages.

31) Defendant, John Doe #16, was a Correctional Official who was in charge of Plaintiff's Health, Safety and care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for Plaintiff's Health, Safety and Care while employed at P.C.C. He is Sued in His individual Capacity for damages.

32) Defendant, John Doe #17 A.K.A. Lt. Smith, was the acting official in charge of Plaintiff's Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. He was personally responsible for over-seeing officials under his Control while employed at P.C.C. He is Sued in His individual Capacity for damages.

33) Defendant, June Doe #1 A.K.A. Sgt. Livingston, was the acting Official in Charge of Plaintiff's Health, Safety and care while housed in the N.A.D.S.U. at P.C.C. She was personally responsible for over-seeing officials under her

Control while employed at P.C.C. She is Sued in Her individual Capacity for Damages.

34) Defendant, Jane Doe #2 A.K.A. Sgt. Blackwell, was the acting official in Charge of Plaintiff's Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. She was personally responsible for over-seeing officials under Her Control while employed at P.C.C. She is Sued in Her individual Capacity for damages.

35) Defendant, Jane Doe #3 A.K.A. P.C.C. Grievance Officer C. Brubaker, was a Grievance officer at P.C.C. who was in charge of Plaintiff's Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. She was personally responsible for Plaintiff's Health, Safety and Care while employed at P.C.C. She is Sued in Her individual Capacity for Damages.

36) Defendant, Jane Doe #4 A.K.A. C/o Kline, was a Correctional official who was in charge of Plaintiff's Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. She was personally responsible for Plaintiff's Health, Safety and care while employed at P.C.C. She is Sued in Her Individual Capacity for damages.

37) Defendant, Jane Doe #5 A.K.A. C/o Eskin, was a Correctional official who was in charge of Plaintiff's Health, Safety and Care while housed in the N.A.D.S.U. at P.C.C. She was personally responsible for Plaintiff's Health, Safety and care while employed at P.C.C. She is Sued in Her individual Capacity for damages.

## • Jurisdiction ¦ Venue •

38) This Court has Subject Matter Jurisdiction over this Action Under Section 42 united states Constitution § 1983. Venue is Proper in this District Pursuant to 28 united states Constitution § 1391(b)(2).

5/2-701

39) Declaratory Judgement is brought Pursuant to 735 ILCS

5/11-101

40) Injunctive Relief is brought Pursuant to 735 ILCS

41) Nominal, Compensatory and Punitive damages are brought Pursuant to 42 united States Constitution § 1983.

42) Venue is Proper Because Defendants are Employed at the P.C.C. in Pontiac, Illinois. (Other Defendant's are employed at the A.R.B in Springfield, Illinois.)

# • Exhaustion of Remedies •

43) The Prison Litigation Reform Act 42 United States Constitution § 1997(E.)(A) provides that No action be brought by a Prisoner with Respect to Prison Conditions until "Such Administrative Remedies as Available" are exhausted.

44) Pursuant to Title 20 Illinois Administrative Code Section 504.810 (A.) of I.D.O.C. "Grievance Procedure"; A grievance must be filed to the Cellhouse Counselor. If Denied the grievance 'can then be appealed to the grievance officer of the Institution. If the grievance is then denied the grievance May then be appealed to the A.R.B.; which is the final stage of the grievance procedure. If the grievance is denied all available Administrative Remedies have thus been exhausted.

45) On October 4th, 2019 Plaintiff filed a grievance to the Cellhouse Counselor Jamie Horton regarding Conditions of Confinement and Staff Conduct. This grievance #081066 was denied. Plaintiff then appealed this denial to the Institutional grievance officer. On December 20th, 2019 Plaintiff received the denial of such appealed grievance. On December 31st, 2019 Plaintiff further Appealed this Denial to the A.R.B. On January 24th, 2020 Plaintiff recieved the Final Denial of his Appeal grievance to the A.R.B Thus, exhausting all available Remedies on this Cause.

46) On October 28th, 2019 Plaintiff filed a grievance to the Cellhouse Counselor Jamie Horton regarding "Conditions of Confinement, Inadequate living Quarters, Harrassment, retaliation and Staff conduct". This grievance #081419 was denied. Plaintiff then appealed this denial to the Institutional grievance officer. On January 27th, 2020 Plaintiff recieved the Denial of such appealed grievance. On January 28th, 2020 Plaintiff further appealed this Denial to the A.R.B. On February 25th, 2020 Plaintiff recieved the Final Denial of his Appeal grievance to the A.R.B Thus, Exhausting all available remedies on this Cause.

47) On November 25th, 2019 Plaintiff filed a grievance to the Cellhouse Counselor Jamie Horton regarding "Conditions of Confinement, Inadequate living Quarters, Human Waste/Feces, leaking ceiling broken pipes and Staff Conduct." This grievance #081951 was denied. Plaintiff then appealed this Denial to the Institutional Grievance Officer. On February 20th, 2020 Plaintiff recieved the Denial of such appealed grievance. On February 26th, 2020 Plaintiff further Appealed this Denial to the A.R.B. On March 9th, 2020 Plaintiff recieved the Final denial of his Appealed grievance to the A.R.B. Thus exhausting all available remedies on this cause.

48) On January 27th, 2020 Plaintiff filed a grievance to the Cellhouse Counselor Jamie Horton regarding "Conditions of Confinement, Basic necessity of life, Unsanitary/inhumane Cruel and unusual Punishment." This grievance #083090 was denied. Plaintiff then appealed this Denial to the Institutional Grievance Officer. On March 10th, 2020 Plaintiff recieved the Denial of Such grievance appealed. On March 17th, 2020 Plaintiff further Appealed this Denial to the A.R.B. On March 23rd, 2020 Plaintiff recieved the final denial to his appealed grievance to the A.R.B. Thus, Exhausting all available remedies on the Cause.

## • Statement Of Facts •

49) On August 8th, 2019 Plaintiff was incarcerated in the I.D.O.C. being housed at the P.C.C. Serving out a Placement in Disciplinary Segregation Status in the N.A.D.S.U.

50) On August 8th, 2019 there was a disturbance that Caused one Prison Johnny White # K-68531 housed in the N.A.D.S.U. Cell #B36 to be heavily sprayed with a Chemical agent known as O.C. or Mace.

51) This Prisoner Johnny White was then extracted from the cell and relocated to another cell. After doing so the Cell #B36 was Never Decontaminated, nor Cleaned by any Means

52) On August 11th, 2019 Plaintiff was housed in the N.A.D.S.U. Cell #B38 when the water on his Sink Completely Ceased to work. In doing so he began notifying C/o John Doe #1, C/o Christian Burton, Sgt. John Doe #2, Sgt. Jane Doe #1 and Lt. John Doe #3 Complaining of not having working water in the cell.

53) After Complaining for two days straight of not having working

water in the cell. On August 13th, 2019 C/o Christian Burton and Lt John Doe #4 (designated Cellhouse Lt.) made a decision to Move Plaintiff into N.A.D.S.U. Cell #836.

54) This cell had visibly not been decontaminated, as the entire cell was covered in an Orange Substance known as OC or Mace. There was a clear and obvious knowing that the cell was inhabitable due to the chemical agent literally covering the entire cell's Ceiling, Floor, Walls, toilet and Ventilation System.

55) Upon placement in this cell the assigned Lt. John Doe #4 Stated to Plaintiff "So you want to Complain about not having water, let's see how you deal with living in Mace."

56) The last Occupant Mr. Johnny White had recently been sprayed heavily with the chemical agent and extracted just days prior to Plaintiff being placed in cell #836.

57) Plaintiff suffered from Burning Skin, itchy and watery eyes, Constant Sneezing, raw burning throat and Sleep deprivation due to the Constant burning from the chemical agent.

58) This was a reoccuring Situation daily due to Plaintiff not being able to adequately Decontaminate cell.

59) Plaintiff continued to Notify Correctional Staff of the reoccuring daily issues Consisting of C/o John Doe #5, C/o John Doe #6 and C/o John Doe #1.

60) Plaintiff had requested adequate cleaning Supplies on Numerous Occasions to Decontaminate the cell of the Chemical agent from C/o John Doe #7, C/o Christian Burton, C/o John Doe #1, Sgt. Craig Wilson, Sgt. Jane Doe #2 Only to be denied.

61) It is a Common practice that the N.A.D.S.U C/o Staff do not Supply offenders with adequate cleaning supplies that enable Plaintiff from decontaminating his cell from the chemical agent in a Sanitary fashion.

62) Furthermore, adequate cleaning supplies were denied to Plaintiff when he requested at least Some form of cleaning Solution to help decontaminate the chemical agent in order to minimize the severe daily and constant burning of his eyes, skin, throat and body.

63) Plaintiff was forced to remain in the above location from August 13th, 2019 through October 8th, 2019; a total of fifty-six days without proper or any Decontamination.

64) Plaintiff complained that his cell had an Inadequate Ventilation System.

65) Plaintiff complained that the Ventilation System located in his cell #836 did not work as the inside of the vent was covered in dust, what appeared to be darkish green mold, Fungus and other unidentifiable agents.

66) Plaintiff notified Sgt. John Doe #2 only to be told "It isn't my problem."

67) Directly behind the Inadequate Ventilation System in Cell #836 there was a broken pipe where anytime a toilet was flushed in the Vacinity the pipe gushed soiled toilet water onto the ventilation area that often leaked into Plaintiff's cell.

68) The unassisted soiled water surrounding the area with the broken pipe caused strong odors of feces, urine, mildew and what appears to be Darkish green mold to linger in the air of the cell.

69) Again, Plaintiff brought this issue to Sgt. John Doe #2 attention on multiple occasions only to be told "To deal with it."

70) Plaintiff was forced to attend Non-Sanitary and inadequate Recreational periods. Outdoor recreational period durations were three hour Sessions and prisoners were allowed to attend Recreation three days a week.

71) During these recreational periods Prisoners have No access to utilize the toilet facilities. Prisoners are forced to urinate and defecate Publicly within their recreational yard cages.

72) This forced Plaintiff on a weekly basis to endure hours of inhaling and being exposed to human waste and Uurine.

73) Plaintiff was forced to stand side by side with Serious Mental Illness (herein as S.M.I.), Mentally Illness (herein as M.I) and other prisoners whom enjoyed throwing urine, feces, Spit and other bodily Fluids on other's prisoners for fun.

74) These types of inhumane assaults occur on the regular basis, where Plaintiff had been assaulted on a few separate occasions.

75) After being Assaulted with human waste Plaintiff reported these actions directly to Sgt. John Doe #2 whose response was "Tell me Something New in Pontiac."

76) One Assault took place specifically on August 15th, 2019 and Plaintiff was not allowed to shower, issue a change of clothing or immediate proper medical attention.

77) During recreational periods Plaintiff was not allowed to Sanitarily wash or clean his hands or genitals after using the yard cage to relieve his bowels.

78) Plaintiff also had to endure Horrendous Non Sanitary Shower usage while housed in the N.A.D.S.U Plaintiff began using the Shower area on August 23rd, 2019 and every scheduled shower day there after.

79) Prisoners are allowed to use the Showers **Three** times a week, the Showers consist of a 3' Ft by 3' Ft by 2' Ft Steel box where Plaintiff was locked in and forced to shower standing straight upward without any room to move from left to Right.

80) These Showers are Never or rarely cleaned, scrubbed or decontaminated from the prior Occupants usage or prior week.

81) The Shower walls were Often Slimy with Soap scum, fungus and what appeared to be a greenish mold where as Plaintiff was afraid to move so that he wouldn't bump up against the wall.

82) The drainage was always clogged up forcing Plaintiff to stand in One to One and a half feet of scum, dirty filled water of the last Prisoners usage.

83) On Many Occasions it wasn't abnormal to see large Waterbugs crawling through the water, large globs of hair can be seen plastered on the wall or Floating in the already Flooded shower area.

84) Plaintiff complained to C/O Christian Burton and C/O John Doe #7 that the showers needed to be decontaminated prior to

Plaintiff's Usage.

85 ) C/o Christian Burton Stated "Come On Dude you're in Pontiac ain't Shit Clean here."

86 ) This was a Continuous issue that deprived Plaintiff of a Sanitary Method of maintaining proper hygeine and Health.

87 ) Plaintiff also had to endure Rodents and Pest while housed in the N.A.D.S.U.

88 ) Plaintiff had witnessed on Numerous occasions birds Flying and nesting within the Cellhouse. Ants and Centapedes were Common in invading Plaintiffs living quarters. Large waterbugs are Seen crawling up and down the gallery at times. Field mice are also known to appear in the "Fall" season Seeking Shelter from the Coming winter.

89 ) On September 21ST, 2019 Plaintiff was awoken by a rustling Noise in his cell, only to find a Mouse had been rumaging through his cloths and hygenic items.

90 ) No means of pestisides or repellant are or have been administered while Plaintiff's placement in the N.A.D.S.U.; Even though Plaintiff Constantly alerted Sgt. John Doe #2 and Sgt. John Doe #8.

91 ) While housed in the N.A.D.S.U. Plaintiff was forced to Extreme Isolation and Confinement.

92 ) Plaintiff in the N.A.D.S.U. was not allowed to have ANY physical human Contact with others besides being handled by Security Staff or Medical personel. Plaintiff was housed in a Single person cell status where Only One Prisoner is allowed to live.

93 ) Plaintiff was housed around other S.M.I. or M.I. Prisoners who For Fun, games and amusement; with the Sole intention of disrupting the Peace, Calm and mindFulness of others, who bang and Kick on

12 of 72

ones in need
of Attention.

94) That atmosphere had caused Offender to be Subject to Mental
Health Decompensation associated with Extreme isolation

95) Such disruptions have caused Plaintiff to Suffer from Sleep
deprivation and insomania in that he was unable to sleep through all the
Noise. Plaintiff was often forced to Stuff wet toilet paper in his ears to help
block out the Noise.

96) While housed in the N.A.D.S.U. Plaintiff was deprived of Religious
Access, specifically religious services. Plaintiff of the Jewish, Judiasm Forth
are Not allowed any form of Religious Service or Fellowship with others
or Staff of the Same Faith. There was No available Services or Fellowship
Opportunities; Neither in a group Setting or at the cell front.

97) Plaintiff Filed a Grievance Complaining of the above mentioned
paragraphs, Thus exhausting all available administrative remedies.

98) On October 8th, 2019 while returning from yard recreation to
Cell # 836 in the N.A.D.S.U., that still had not been decontaminated properly from
a Chemical agent, upon entering the building Plaintiff was Stopped by Sgt.
John Doe # 8 stating, "So you can't deal with or be man enough to tolerate Some
old mace we've moved your cell (and with the Ut-Most Sarcasm and ill intentions)
we've given you the best cell left."

99) Upon being Placed in the New location N.A.D.S.U. Cell # 728
Plaintiff immediately Noticed that the Sink's hot water had been Stuck in the
"On" position where the water ran with Constant Full Pressure. The entire
Sink had what appeared to be Calcium, lime, a dark color mold and
mildew build up in an extremely unsanitary manner.

100) Plaintiff immediately informed C/o John Doe # 9 that the cell
was inadequate. Plaintiff then requested adequate cleaning Supplies only to be denied.

Inside the feeding slot "known as the Chuck hole" there had been a Nest of "Gnats" (small Flies). The inside chuckhole area Still reaked of human Feces from the Previous S.M.I. Prisoners, known to have thrown and spread Feces over their Cells in an attempt for attention. Again Plaintiff was told to deal with it by C/O John Doe # 9.

101 ) That Same Very night the sink had begun to over Flow awakening Plaintiff From his sleep.

102 ) The Very next day On October 9th, 2019 Plaintiff again Complained to C/O Jane Doe #4 and C/O John Doe #9 about the over Flowing sink.

103 ) Shortly there after, a decision was made by Lt. John Doe #10 The assigned cellhouse Lt. to move Plaintiff into a New location N.A.D.S.U. Cell # 730.

104 ) Upon entry of the Cell C/O John Doe #9 and Plaintiff made a mental note of a huge bubble-pocket bulging From the Ceiling as what appeared to Contain Some form of liquid.

105 ) Again this New location appeared to have and be covered in human Feces. He requested adequate Cleaning Supplies, Plaintiff was told by Lt. John Doe #11 "to deal with It" and cleaning Supplies were denied.

106 ) Plaintiff noticed there was a broken pipe directly behind his Cell where anytime Someone in the vacinity Flushed their toilers Soiled fecal water gushed onto his vent that leaked into his cell.

107 ) Everytime Someone Flushed their toilet the bulge on the Ceiling appeared to grow bigger. Again he Complained to the Cellhouse Staff only to be denied, in essence "it isn't their problem."

108 ) On October 11th, 2019 while sleeping on the cell bed the Pocket of unknown Foul and rancid liquid burst Spilling it's

Contents directly on this Plaintiff's head and face, forcing him to wake up in shock.

(109) Plaintiff stopped C/o John Doe #12 the assigned C/o to work the gallery on the 11pm-7am shift to explain what had just happened. To Please Contact Medical Staff So I could recieve proper medical attention; which included the Flushing of his eyes with a medical Solution.

(110) Plaintiff was refused medical treatment. He then requested an exchange of clean clothes and bedding as the soiled liquid had an extreme odor and staind the Sheets. Plaintiff was denied this request by C/o John Doe #12, despite this Official in plain view of the soiled clothing and Sheets.

(111) Plaintiff then stated "well atleast let me get some cleaning Supplies to clean up or move me to a different cell." Plaintiff was told by C/o John Doe #12 "You ask for too much arent you a Convict."

(112) The following day on October 12th, 2019 Plaintiff noticed that directly under the pocket where the bulge on the ceiling was, there was a crack in the ceiling where when toilees were flushed in the vacinity the broken pipes Soiled water Seaps through the Crack and drips directly over the area where his bed is located.

(113) Plaintiff was forced on a daily basis to be Subjected to Soiled water with a foul and rancid odor to drip on him throughout the Night as he attempted to Sleep.

(114) Plaintiff again relayed this Concern to C/o John Doe #9 Only to be told "Stop Complaining and man up."

(115) Plaintiff further Notified Lt. John Doe #11 that his current cell lacked adequate Ventilation Causing Plaintiffs Nostrils to become Decongested, Coughing, Sneezing and extreme allergy symptoms.

116 ) Only to be disregarded.

117 ) Plaintiff Filed a Grievance Complaining of the above mentioned paragraphs, Thus exhausting all available administrative remedies.

118 ) Following No action or form of relief plaintiff filed "Another" Grievance on November 25th, 2019 Complaining of a crack in his Ceiling above his bed area that leaks Soiled toilet water due to the broken pipe directly behind his Cell.

119 ) On November 15th, 2019 Plaintiff spoke to Sgt. John Doe #13 on the 11pm-7am shift regarding the Constant and random leakage Consisting of Human waste, feces and urine onto his person and bedding that was clearly visible to his Person.

120 ) Sgt. John Doe #13 acknowledged the leakage and Stated he would personally place a work order report on the Cell.

121 ) Plaintiff Filed a Grievance Complaining of the above mentioned Paragraphs, Thus exhausting all available administrative remedies.

122 ) Plaintiff remained in the above mentioned Conditions From October 8th, 2019 until November 27th, 2019

123 ) On November 27th, 2019 Plaintiff was Moved from NADSU Cell # 730 to a New location in the N.A.D.S.U. Cell # 527

124 ) On January 24th, 2020 Plaintiff was moved out of Cell # 527 To a New location N.A.D.S.U cell #532 due to Structural issues within that cell.

125 ) Upon Placement into cell #532 Plaintiff observed the toilet facilities to be inoperable in that the toilet was clogged up and did not Flush properly. Flushing the toilet Consisted of not

going down and upon completion foreign objects to regergitate from the septic tank pipeline.

126) This consisted of contents; used toilet paper, feces and human waste. The smell of said materials was foul and lingered within the cell.

127) At approximately 2:30 pm the gallery C/o staff conducted their final walk through count check, at which time Plaintiff notified both C/o Jane Doe #5 and C/o John Doe #14 of the aforementioned and requested a plunger or the "snake" (a utility device used to unclog toilets) or to be moved.

128) Plaintiff was told he had to wait until 2nd shift to get some form of relief.

129) The 2nd shift (3pm-11pm) came in and Plaintiff notified C/o John Doe #15 who was assigned to the N.A.D.S.U. 5 gallery of the concerns, only to be told "That there wasn't anything" he could do about it.

130) Later that evening Plaintiff had to use the restroom so badly, he used the inoperable toilet and the human waste - feces would not go down the toilet when attempting to flush the toilet.

131) The very next day on January 25th, 2020 Plaintiff relayed his concerns regarding the inoperable toilet to C/o John Doe #14 who stated "He'd bring me a plunger to see if that'll work." The plunger was never brought.

132) Later that evening on the 3pm-11pm shift Plaintiff again relayed his concerns to the C/o John Doe #16 assigned to the N.A.D.S.U. 5 gallery regarding the inoperable toilet.

133) This C/o John Doe #16 notified the cellhouse Lt. John Doe #17,

17 of 72

134) This Lt John Doe #17 ordered his Staff to bring Plaintiff the "Snake" in order to "Snake" out the toilet to see if that would Fix the problem.

135) The Snake was brought and to No avail the toilet remained inoperable. Plaintiff was placed back into cell #532 and told that the Only thing that Could be done is placement of a Work order, but that May take a few weeks or longer to execute.

136) Plaintiff requested to be moved into another cell and was told that there weren't any.

137) Later that evening Plaintiffs Stomach was in Pain From holding in his Human Waste That he was forced to deficate in a large plastic bag in the Sink and then dispose of it by institutional garbage.

138) The inoperable toilet was full of urine and had a Strong urine scent coming there of from constant usage of Plaintiff.

139) On January 26th, 2019 Plaintiff again requested to be Moved and was told that there was nothing that could be done. I'd have to wait for maintainence to fix the toilet.

140) Later that nights Plaintiff was forced to deficate in a large plastic bag placed in his Sink and disposed of by the institutional garbage.

141) Plaintiff Filed a Grievance Complaining of the above mentioned paragraphs, Thus exhausting all available administrative remedies.

• Section 1983 of Title 42 of U.S.C.A. •

18 of 72

142 ) Every Person who <u>Under Color of any Statue, ordinance, regulation, Custom or usage of any State or territory, or the District of Columbia Subjects," or Causes to be Subjected any Citizen of the United States or other Person's within the jurisdiction thereof to the "Deprivation of any rights, priveleges or immunities Secured by the Constitutions and Laws," Shall be liable to the party injured in an action at Law, Suit in equity or other proper proceeding for Redress."</u>

143 ) In order to establish a Violation of the Eighth Amendment it is necessary to Show "a deprivation of a basic human need" (such as food, Clothing, Shelter, exercise, medical care, or reasonable Safety).

144 ) The Eighth Amendment protects against Conditions that pose an unreasonable risk of Future harm, as well as those that are Currently Causing harm.

and

" Deliberate Indifference" on the Part of one or more Defendant(s). Deliberate Indifference is a Subjective, actual-Knowledge standard.

145 ) Prisoners are Constitutionally entitled to environmental Conditions that do not pose serious risks to health and Safety. Among the Conditions that have been found to Violate the Eight Amendment are;

- Inadequate Ventilation
- Lack of drinkable water
- Exposure to Sewage
- Excessive Noise
- Sleep deprivation
- Exposure to insects, rodents and other Vermin
- Defective Plumbing
- Deprivation of basic Sanitation
- Denial of adequate toilet facilities

• Exposure to Extreme behavior of S.M.I. Prisoners

• <u>Count I - Cruel and Unusual Punishment 42</u>
<u>U.S.C.A. § 1983 Eighth Amendment Violation</u>

146 ) The allegations of paragraph #1 through <u>#145</u> are incorporated into this Count One as if Set forth herein fully.

147 ) Plaintiff has a Constitutional right under the Eighth Amendment U.S.C.A. not to be Subjected to Cruel and Unusual Punishment without provocation by State prison Correctional officers.

148 ) Defendant(S) C/o Christian Burton, Sgt. Craig Wilson, Counselor Jamie Horton, Warden Teri Kennedy, Warden Emily Ruskin, Warden Leonta Jackson, A.R.B. Grievance Officer Amy Burle, A.R.B. Grievance Officer Dave White, Director Rob Jeffreys, C/o John Doe #1, Sgt. John Doe #2, Lt. John Doe #3, Lt. John Doe #4, C/o John Doe #5, C/o John Doe #6, C/o John Doe #7, Sgt. John Doe #8, C/o John Doe #9, Lt. John Doe #10, Lt. John Doe #11, C/o John Doe #12, Sgt. John Doe #13, C/o John Doe #14, C/o John Doe #15, C/o John Doe #16, Lt. John Doe #17, Sgt. Jane Doe #1, Sgt. Jane Doe #2, Pontiac Correctional Grievance Officer Jane Doe #3, C/o Jane Doe #4 and C/o Jane Doe #5 Acting under color of State law Maliciously Subjected Plaintiff to Inhumane, Harsh Conditions of Con finement.

149 ) Defendants Subjected Plaintiff to Treatment and Conditions of Confinement that are of Atypical and Significant hardshyps in relation to the Ordinary incidents of Prison life that Caused Plaintiff Harsh, Cruel and Inhumane Conditions of confinement.

150 ) The Eight Amendment of the U.S.C. prohibits Cruel and Unusual Punishment of the United States Citizens by the federal Government

151 ) Plaintiff's rights secured under the Eight Amendment to be free from Cruel and unusual Punishment by the State of Illinois

has been abridged by Defendant's.

• <u>Count II - Failure to Protect or Intervene 42 U.S.C. §1983</u> •
<u>Eight Amendment Violation</u>

152) The allegations of paragraph #1 through #151 are incorporated into this Count II as if Set forth here in fully.

153) Plaintiff has a Protected Constitutional Right secured by the Eighth Amendment to the U.S.C. not to be Subjected to Harsh, Cruel and unusual Punishment by Prison Officials deliberate failure to Protect or Intervene Known Constitutional Violations of Inhumane Conditions and Known deliberate indifference to his needs.

154) Defendants C/o Christian Burton, Sgt. Craig Wilson, Counselor Jamie Horton, Warden Teri Kennedy, Warden Emily Ruskin, Warden Leonta Jackson, A.R.B. Grievance officer Amy Burle, A.R.B. Grievance officer Dave White, Director Rob Jeffreys, C/o John Doe #1, Sgt. John Doe #2, Lt. John Doe #3, Lt. John Doe #4, C/o John Doe #5, C/o John Doe #6, C/o John Doe #7, Sgt. John Doe #8, C/o John Doe #9, Lt. John Doe #10, Lt. John Doe #11, C/o John Doe #12, Sgt. John Doe #13, C/o John Doe #14, C/o John Doe #15, C/o John Doe #16, Lt. John Doe #17, Sgt. Jane Doe #1, Sgt. Jane Doe #2, Pontiac Correctional Grievance officer Jane Doe #3, C/o Jane Doe #4, C/o Jane Doe #5 deliberately and recklessly Failed to protect Plaintiff at all times relevant when being Subjected to Inhumane, Harsh and Cruel and Unusual Punishment Conditions of Confinement in relation to the ordinary incidents of Prison life.

155) These Conditions of Confinement Subjected Plaintiff to Atypical and Significant hardships without Cause or provocation.

156) Defendants C/o Christian Burton, Sgt. Craig Wilson, Counselor Jamie Horton, Warden Teri Kennedy, Warden Emily Ruskin, Warden Leonta Jackson, A.R.B. Grievance officer Amy Burle, A.R.B. Grievance officer Dave White, Director Rob Jeffreys, C/o John Doe #1, Sgt. John Doe #2, Lt. John Doe #3, Lt.

John Doe #4, C/o John Doe #5, C/o John Doe #6, C/o John Doe #7, Sgt.
John Doe #8, C/o John Doe #9, Lt. John Doe #10, Lt. John Doe #11, C/o John Doe #12,
Sgt. John Doe 13, C/o John Doe #14, C/o John Doe #15, C/o John Doe #16, Lt. John Doe #17,
Sgt. Jane Doe #1, Sgt. Jane Doe #2, Pontiac Grievance Officer Jane Doe #3, C/o Jane
Doe #4, C/o Jane Doe #5 Deliberately with reckless disregard Failed to
Intervene with deliberate indifference at all times relevant when Plaintiff
needed Attention for his harsh, Inhumane, Cruel and Unusual Punishment
Conditions of Confinement.

## Count III — Deliberate Indifference 42 U.S.C. § 1983
## Eighth Amendment Violation

157 ) The allegations of Paragraph #1 through #156 are
incorporated into this Count III as if set forth herein Fully.

158 ) Plaintiff has a Constitutional right under the Eighth
Amendment to the U.S.C. not to be Subjected to Inhumane, Harsh,
Cruel and Unusual Punishment Conditions of Confinement by State
Prison officials deliberate indifference to his Conditions of
Confinement.

159 ) Defendants C/o Christian Burton, Sgt. Craig Wilson, Counselor
Jamie Hinton, Warden Teri Kennedy, Warden Emily Ruskin, Warden Leonta
Jackson, A.R.B Grievance Officer Amy Burle, A.R.B Grievance officer Dave White,
Director Rob Jeffreys, C/o John Doe #1, Sgt. John Doe #2, Lt. John Doe #3, Lt. John
Doe #4, C/o John Doe #5, C/o John Doe #6, C/o John Doe #7, Sgt. John Doe #8, C/o
John Doe #9, Lt. John Doe #10, Lt. John Doe #11, C/o John Doe #12, Sgt. John Doe
#13, C/o John Doe #14, C/o John Doe #15, C/o John Doe #16, Lt. John Doe #17, Sgt.
Jane Doe #1, Sgt. Jane Doe #2, Pontiac Correctional Grievance officer Jane Doe
#3, C/o Jane Doe #4, C/o Jane Doe #5 Subjected Plaintiff to Conditions of
Confinement at Pontiac Correctional Center that Constituted a Deprivation of
Basic Human needs, including exposure to, infliction of and failure to
Address the Following Conditions.

A.) Inadequate Ventilation
B.) Lack of drinking water in cell

C.) Exposure to Sewage

D.) Exposure to Excessive Noise levels

E.) Sleep Deprivation

F.) Exposure to insects, rodents and other Vermin

G.) Exposure to Defective Plumbing

H.) Deprivation of basic Sanitation

I.) Denial of adequate toilet facilities

J.) Exposure to Extreme behavior of S.M.I. Prisoners

K.) Inadequate Sanitation

L.) Lack of access to cleaning supplies

M.) Exposure to mold and Mildew

N.) Exposure to a Chemical Agent OC - Mace

O.) Exposure to Feces, urine and Human Waste

P.) Non Sanitary Showers

Q.) Non Sanitary Recreation Period

R.) Deprivation to Access religious Services

S.) Deprivation of Access to Medical Attention

160 ) Defendants C/o Christian Burton, Sgt. Craig Wilson, Counselor Jamie Horton, Warden Teri Kennedy, Warden Emily Ruskin, Warden Leonta Jackson, A.R.B Grievance officer Amy Birkle, A.R.B. Grievance Officer Dawn White, Director Rob Jeffreys, C/o John Doe #1, Sgt. John Doe #2, Lt. John Doe #3, Lt. John Doe #4, C/o John Doe #5, C/o John Doe #6, C/o John Doe #7, Sgt. John Doe #8, C/o John Doe #9, Lt. John Doe #10, Lt. John Doe #11, C/o John Doe #12, Sgt. John Doe #13, C/o John Doe #14, C/o John Doe #15, C/o John Doe #16, Lt. John Doe #17, Sgt. Jane Doe #1, Sgt. Jane Doe #2, Pontiac Correctional Grievance officer Jane Doe #3, C/o Jane Doe #4, C/o Jane Doe #5 had Personal Knowledge that Plaintiff "was at Serious risk of being harmed and decided not to do anything to Prevent that harm from Occurring even though he/she could easily have done so."

161 ) Plaintiff made Defendants aware of his Serious Conditions through Verbal accounts and written accounts. by Complaining to Defendants on Numerous occasions.

162 ) Even after the Filing of Plaintiffs Grievances, he was

Still Subjected to Cruel and Unusual Punishment through Inhumane, Harsh and UnConstitutional Conditions of Confinement. Where Defendants failed to do anything about these issues even though they could have easily done so.

163 ) Plaintiff had a clear and obvious serious need for his Conditions of Confinement to be addressed from the extreme Circumstances Surrounding the over all events, Yet Defendants Completely disregarded those needs.

- <u>Count IV</u> - Liability 42 U.S.C. § 1983
  <u>Eighth Amendment Violation</u>.

164 ) The allegations of paragraph #1 through #163 are incorporated into this Count IV as if Set forth here in fully.

165 ) Plaintiff has a Protected Constitutional Right Secured by the Eighth Amendment to the U.S.C. not to be Subjected to Harsh, Inhumane, Cruel and unUsual Punishment by Prison Correction Officers without Cause or provocation.

166 ) Defendants % Christian Burton, Sgt Craig Wilson, Counselor Jamie Horton, Warden Teri Kennedy, Warden Emily Ruskin, Warden Leonta Jackson, A.R.B. Grievance Officer Amy Burle, A.R.B. Grievance Officer Dave White, Director Rob Jeffreys, % John Doe #1, Sgt. John Doe #2, Lt. John Doe #3, Lt. John Doe #4, % John Doe #5, % John Doe #6, % John Doe #7, Sgt. John Doe #8, % John Doe #9, Lt. John Doe #10, Lt. John Doe #11, % John Doe #12, Sgt. John Doe #13, % John Doe #14, % John Doe #15, % John Doe #16, Lt. John Doe #17, Sgt. Jane Doe #1, Sgt. Jane Doe #2, Pontiac Correctional Grievance Officer Jane Doe #3, % Jane Doe #4, % Jane Doe #5 are held liable in that the Conduct Causing the Constitutional deprivation occured at his/her direction or with his/her Knowledge and Consent in that Defendants knew of the Conduct and facilitated it, approved it, Condoned it, or turned a blind eye to it.

167 ) Defendants are obligated by the Constitution as well as by Illinois law to evaluate the grievance and the appeal, not merely just sign it.

168 ) "See Verser v. Elyea 113 F. Supp 2d 1211 (2000)" holding;

" Decision by Officer and Director to Concur with denial of Prisoner's grievance appeal established sufficient personal involvement to impose $1983 liability; and Officer and Director were not enabled to quility Immunity."

• Conclusion •

169 ) These deprivations and the risks they Posed to Plaintiff Violate Contemporary Standards of decency and denied Plaintiff minimal Decency Civilized Measures of Life's necessities.

170 ) This Deprivation of basic human needs is Serious and excessive, Given that they Pose Serious harm or Serious risk of harm to Plaintiff's Health and Safety.

171 ) Despite having actual knowledge of the Serious risks Posed to Plaintiff's Health and Safety, Defendants disregarded those risks by turning a blind eye and taking No actions to rectify them. As Such, Defendants have acted with Deliberate Indifference Towards Serious deprivations of the Plaintiff's basic Human needs.

172 ) Defendant's actions have deprived Plaintiff of his right to be free from Cruel and Unusual Punishment and demonstrate a reckless and Callous disregard of his rights. As Such, Defendant's have Violated the rights of Plaintiff Protected by the Eighth Amendment to the U.S.C. and 42 U.S.C. § 1983

173 ) Therefore, Plaintiff has Sufficiently alleged facts

Stating a Cause of action and Verily believes he is entitled to the following relief Sought;

## • Prayer For Relief •

(74) Wherefore, Plaintiff Demands a Jury Trial and for the Court to enter and Order the following;

A.) Enter a Declaration under 735 ILCS 5/2-701 et. seq. Declaring defendant's actions described here in as to have Violated Plaintiff's Rights under the Eighth Amendment of the U.S.C. of both Illinois and federal Constitution!

B.) Enter an Injunction, enjoining Defendants From engaging in any action or Conduct that Violates Plaintiffs Rights.

C.) Award Plaintiff a Judgement Pursuant to 42 U.S.C. § 1983 against Defendant's, Seperately and jointly as follows;

I.) Compensatory Damages of $50,000.00 against Defendant's jointly and Severly For their Cruel and Unusual Punishment to Inhumane and Harsh Conditions of Confinement against Plaintiff.

II.) Punitive Damages of $50,000.00 against Defendant's individually for their Evil, Inhumane and Harsh acts Violating Plaintiff's Constitutional Rights under the Eighth Amendment U.S.C.

III.) Punitive Damages of $50,000.00 against Defendant's individually for their Deliberate Indifference regarding Defendant's evil, Harsh and Inhumane acts in Violating Plaintiffs Rights under the Eighth Amendment U.S.C.

IV.) Cost, Interests and Attorney Fee's

V.) Any other relief the Court deems Just and proper.

26 of 72

Respectfully Submitted

/s/x Brian J. Hargarten

Brian J. Hargarten

#R47926

10930 Lawrence Rd.

Sumner, Illinois

62466

Plaintiff Pro-se

September 10th, 2021
Date