IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| BRIAN HARGARTEN,<br>    Plaintiff,<br><br>v.<br><br>CRAIG WILSON *et al.*,<br>    Defendants. | Case No. 1:21-cv-01260-JEH |

### Order

    Before the Court is a Motion for Summary Judgment (Doc. 120) filed by Defendants Larry Bernstein, Andrew Bryan, Luis Diaz, Downie Drysdale, Kevin Edens, Kimberly Eskins, Lance Evans, Michael George, David Jackson, Rhonda Kline-Lohmar, David Lindsay, Ryleigh Livingston, Felipe Montes De Oca, and Craig Wilson. Plaintiff Brian Hargarten, an inmate at Menard Correctional Center, filed his response (Doc. 126), and Defendants have filed their reply (Doc. 127). Plaintiff has also filed two Motions for Status (Docs 129, 130).

    Defendants' dispositive motion is granted in part and denied in part for the following reasons. Plaintiff's Motions for Status are moot.

### I

    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

"When opposing a properly supported motion for summary judgment, the non-moving party must 'cit[e] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence … of a genuine dispute.'" *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)). All facts must be construed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence supporting the nonmovant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252.

II

A

In September 2021, Plaintiff filed a Complaint alleging violations from August 6, 2019, to January 26, 2020, at Pontiac Correctional Center ("Pontiac"). (Pl. Dep., Doc 120-1 at 11:10-16.) Plaintiff identified twenty-five officials and six Doe Defendants. (Pl. Compl., Doc. 1.) As to some of the Doe Defendants, Plaintiff listed them as "John Doe #5 [also known as corrections officer] Lindsey" and "John Doe #6 [also known as corrections officer] Jackson." (Pl. Compl., Doc. 1 at 4:20-21.) Requests for waiver of service were sent to Pontiac for Corrections Officers Jackson and Lindsey. (Docs. 13-11, 13-12.) Corrections Officers David Jackson and David Lindsay returned executed waiver of service (Doc. 23, 30).

At Plaintiff's July 2, 2024, deposition, he testified that there were "multiple Jacksons working at Pontiac," adding that he had "not identified" the specific male corrections officer Jackson. Plaintiff explained he had "yet to go through the logs … sent ... to identify which Jackson …." (Doc. 120-1 at 70:7-14.) When asked about David Lindsay, Plaintiff stated "there [are] multiple Lindseys that work at Pontiac …, so I have not been able to go through the logs … sent … to identify which Lindsey it is …." (*Id.* at 71:17-24.)[1]

**B**

Plaintiff was housed in Pontiac cell 838 from July 24, 2019, to August 12, 2019. (Pl. Dep., Doc. 120-1 at 5:8-24; Hsg. Unit. Hist., Doc. 120-2 at 1.) On August 11, 2019, the water stopped flowing from his sink. (Pl. Dep., Doc. 120-1 at 15:18-16:10.) Plaintiff complained to Defendants Bryan, Edens, Livingston, and Wilson about the inoperable sink. (*Id.* at 16:22–17:21, 74:5–14; Def. Reply at 127 at 1.) Based on Plaintiff's complaint, Livingston moved Plaintiff from cell 838 to cell 836 on August 12, 2019. (Pl. Dep., Doc. 120-1 at 20:7-1:4; Hsg. Unit. Hist., Doc. 120-2 at 1.)

**C**

Plaintiff moved into cell 836 on August 12, 2019. (Hsg. Unit. Hist., Doc. 120-2 at 1.) Plaintiff complained to Defendant Wilson that the cell had not been decontaminated or cleaned after the dispersal of oleoresin capsicum ("OC") spray on August 8, 2019, and requested to be moved to a different cell. (Pl. Dep., Doc. 120-1 at 22:2-3, 25:15-26:24; Pl. Griev., Doc. 120-3 at 8.) Wilson told Plaintiff that cleaning supplies were distributed on Saturdays and denied Plaintiff's request to be moved to a different cell. (Pl. Dep., Doc. 120-1 at 25:15-26:24.)

Plaintiff requested cleaning supplies from Defendants Bryan, George, Kline-Lohmar, and Montes De Oca, who informed Plaintiff that they are distributed

---

[1] Although Plaintiff identified Lindsey, the Court's Order uses the spelling Lindsay, as reflected in Defendants' filings.

3

weekly. (*Id*. at 66:6-16, 69:20-70:3, 71:2-13, 73:3-15; Pl. Griev., Doc. 120-3 at 8.) That Saturday, and every subsequent week, Plaintiff received "one small Styrofoam cup with an inch full of liquid in it." (Pl. Dep., Doc. 120-1 at 26:25-28:9.) Plaintiff contends that the liquid provided was insufficient and thus, ineffective in cleaning the OC residue. (Pl. Dep., Doc. 120-1 at 26:25-28:9.) Plaintiff experienced sneezing, coughing, burning and watery eyes, and itchy and burning skin. (*Id*. at 29:22-23.)

Plaintiff claimed the water pipes behind the walls of cell 836 leaked, which sometimes resulted in water seeping into cell 836. (*Id*. at 30:22–31:14.) Plaintiff complained to Defendant Evans. (*Id*. at 31:15-25, 69:8-16.) Plaintiff stated the pipe leak caused him "general misery, loss of appetite, loss of weight from loss of appetite, vomiting, [and] feeling nauseated." Plaintiff did not seek medical attention for those symptoms. (*Id*. at 32:1–17.) Plaintiff remained in cell 836 until October 8, 2019. (*Id*. at 28:2-5.) Plaintiff acknowledged that he was moved because renovations to the entire gallery where cell 836 was located were undertaken to fix, in part, the conditions he complained about. (*Id*. at 48:17-49:6.)

### D

On October 8, 2019, Plaintiff moved to cell 728, which had an overflowing sink. (*Id*. at 46:20–23, Hsg. Unit. Hist., Doc. 120-2 at 1.) After Plaintiff complained to Defendants Edens, George, Kline-Lohmar, and Wilson about the conditions, he was moved from cell 728 on October 9, 2019. (Pl. Dep., Doc. 120-1 at 47:12-48:10, 49:7-17, 68:7-15, 69:20-70:3, 71:2-13.)

### E

Plaintiff moved to cell 730 on October 9, 2019. (*Id*. at 47:24-48:4; Hsg. Unit. Hist., Doc. 120-2 at 1.) Plaintiff stated that the pipe leaked at random times, but neither flooded nor contained standing water. (Pl. Dep., Doc. 120-1 at 53:15-55:6.) As Plaintiff slept on an undisclosed night, water leaked from the ceiling and splashed all over him. (*Id*. at 49:18-51:9.) Plaintiff complained to Defendant Diaz,

4

who submitted a work order report but refused to give Plaintiff a change of clothes. Plaintiff contends that the water splash caused rashes on his neck, and he asked Diaz to flush his eyes with a chemical solution, which Diaz denied. Plaintiff then spoke to a nurse, who stated that Plaintiff looked fine. (*Id.*, 49:18-51:9, 51:20-52:12.) Plaintiff noted that the normal procedure to request medical care is to talk to nursing staff or put in written requests. (*Id.* at 52:17-53:9.)

Plaintiff also complained to Defendant Edens about inadequate ventilation and to Defendants George, Kline-Lohmar, and Wilson about the cell's "structural issues." (*Id.* at 68:7-15, 69:20-70:3, 71:2-13, 74:5-14.) Plaintiff moved from cell 730 on November 27, 2019, because of the complaints he made to staff, including Diaz and Eskins, about the conditions in cell 730. (*Id.* at 51:10-19, 55:15-56:12; Hsg. Unit. Hist., Doc. 120-2 at 1.)

F

Plaintiff moved to cell 527 on November 27, 2019. (Pl. Dep., Doc. 120-1 at 55:12-14; Hsg. Unit. Hist., Doc. 120-2 at 1.) Plaintiff contends that cell 527 had issues with "structural issues on the door," which Plaintiff explained was water leaking from the door anytime it rained and gnats' nests in the chuckhole area. (Pl. Dep., Doc. 120-1 at 55:15-57:17.) Plaintiff complained to Defendants Diaz, Eskins, and Bernstein about the conditions. (*Id.* 55:15-17, 57:18-20; 64:11-20.) Plaintiff moved from cell 527 on January 24, 2020, due to his complaints about the cell conditions. (*Id.* at 57: 21-23; Hsg. Unit. Hist., Doc. 120-2 at 1.)

G

Plaintiff moved to cell 532 on January 24, 2020. (Pl. Dep., Doc. 120-1 at 57:24-58:3; Hsg. Unit. Hist., Doc. 120-2 at 1.) Plaintiff noted that the toilet in cell 532 would not flush properly. Plaintiff complained to Defendants Bernstein and Eskins, who told Plaintiff that they would submit a work order and notify the shift supervisor. Defendant Diaz also attempted unsuccessfully to unclog the defective

5

flushing. (*Id*. at 58:9-59:11, 66:20-67:10.) Plaintiff moved from cell 532 on January 26, 2020. (*Id*. at 56:12-60:8; Hsg. Unit. Hist., Doc. 120-2 at 1.)

## H

Pontiac's outdoor recreational pod consists of ten, six-by-four-foot cages without a toilet that permit one inmate recreation time. The recreational sessions last from one to three hours and are monitored by corrections officials located in towers. When Plaintiff needed to return inside to use the toilet, the corrections staff could not hear him. Between August 2019 and January 2020, Plaintiff had to defecate or urinate outside approximately six times. (*Id*. 32:18–35:25.)

Plaintiff complained to Defendants Drysdale, Edens, and Evans on separate occasions about the lack of toilet access in the outdoor recreational area and requested that Pontiac staff check more frequently to determine whether anyone needed to use the toilet. (*Id*. at 36:1–38:2; 68:7-15.)

## I

During the time mentioned, the available shower area had "possibly black mold or a foreign substance," and the "drains were often clogged with dead hair." (*Id*. at 39:25-41:20.) Plaintiff complained to Defendants George, Kline-Lohmar, Montes De Oca, and Wilson about the conditions of the shower area. (*Id*. at 41:3-20; 73:3-15.) Plaintiff believes that the shower conditions caused him "skin rashes," "boils," "pimples," and "athlete's foot." Plaintiff spoke to the nurses about the issue but did not put in a sick call request to see a doctor. (*Id*. at 41:21–12.)

## J

Plaintiff stated the cell house he resided in "was overrun by field mice, ants, spiders, centipedes . . . and birds." (*Id*. at 42:13–43:9.) Plaintiff asserts that he spoke with Defendants Bryant, George, Kline-Lohmar, Montes De Oca, and Wilson about the pests in the cell house. (*Id*. at 43:10-24, 66:6-16, 73:3-15.) The pests did not cause Plaintiff physical injury. (*Id*. at 43:25-44:5.)

K

Plaintiff contends that other individuals in custody housed in the same segregated unit had "weaponized screaming, banging, [and] kicking" and caused "nonstop chaos all day, every day." (*Id*. at 44:6–45:3.) Plaintiff spoke with Defendants Kline-Lohmar, George, and Bryan about the noise. (*Id*. at 45:4-46:6; 66:6-16.) Plaintiff asserts that the noise caused him sleep deprivation, lack of appetite, and affected his reading, writing, and legal studies. (*Id*. at 46:7–16.) Plaintiff believed that Defendants could have either issued disciplinary reports, transferred the offending inmates, or transferred him to another area of the prison. (*Id*. at 45:12-46:6.) Plaintiff moved out of the segregated unit on October 8, 2019, for scheduled maintenance and repair. (*Id*. at 48:12-49:6; Exhibit C, at 000475.)

III

A

The Eighth Amendment's prohibition against cruel and unusual punishment imposes upon prison officials the duty to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A plaintiff alleging an Eighth Amendment conditions-of-confinement claim must satisfy an objective and a subjective component. *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir. 2002).

The objective component contemplates "unacceptable conditions … that pose a substantial risk to inmate health or safety." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (internal quotation marks omitted). *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012) ("We consider first whether the adverse conditions complained of were sufficiently serious, such that the acts or omissions of prison officials giving rise to these conditions deprived the prisoner of a minimal civilized measure of life's necessities."); *see also* Rhodes *v.* Chapman, 452 U.S. 337, 347 (1981) (concluding that conditions of confinement count

as cruel and unusual punishment only when they deny an inmate "the minimal civilized measure of life's necessities").

If the objective component is established, the Court then considers the subjective component of deliberate indifference. *Rice*, 675 F.3d at 665. This inquiry focuses on whether the prison official acted with a sufficiently culpable state of mind. *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

**B**

Defendants Jackson and Lindsay assert their entitlement to summary judgment, claiming that Plaintiff cannot show their personal involvement in any alleged deprivations. In support, Defendants contend Plaintiff admitted during his deposition that he was unable to identify whether Jackson and Lindsay are the correct parties. (Def. MSJ., Doc. 120 at 2:5.) The Court disagrees with Defendants' characterization of Plaintiff's testimony.

In July 2024, Plaintiff testified he had yet to verify that Defendants David Jackson and David Lindsay were the correct parties, explaining that he had yet to examine the discovery provided by Defendants. The Court notes that Plaintiff informed defense counsel during his deposition that he had incorrectly named another Defendant (Pl. Dep., Doc. 120-1 at 65:7-15) and later moved to dismiss that person (Doc. 105). Plaintiff also filed another Motion to Dismiss (Doc. 107), explaining that after reviewing the discovery provided, he had incorrectly identified a second person, whom he sought to dismiss. The reasonable inference is that Plaintiff determined Jackson and Lindsay were the proper parties. Jackson and Lindsay do not provide any other basis to grant them summary judgment.

However, in Plaintiff's response, he asserts that after moving into cell 836 on August 12, 2019, he complained to Defendants Jackson and Lindsay that the cell had not been decontaminated or cleaned. In support, Plaintiff cites grievance 081066 dated October 4, 2019. (Doc. 120-3 at 7-8.) As Jackson and Lindsay point out in their reply, although Plaintiff raises his decontamination claim, he does not mention Jackson or Lindsay. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.") Plaintiff also does not provide any further evidence showing Jackson or Lindsay's personal involvement in any other alleged deprivation. Thus, Jackson and Lindsay are entitled to summary judgment.

C

1

Defendants Bryan, Edens, Livingston, and Wilson assert they are entitled to judgment as a matter of law regarding Plaintiff's inoperable sink claim in cell 838 because Plaintiff cannot satisfy the subjective component of his burden. Plaintiff responds, claiming that Defendants were deliberately indifferent because they did not immediately move him from cell 838 on August 11, 2019, when he complained about the inoperable sink. (Pl. Res., Doc. 126 at 18.) Plaintiff acknowledges that he transferred from cell 838 the day after he complained to Defendants, but asserts that during this time, he did not have access to drinking water. (Pl. Res., Doc. 126 at 8:I.); *see also Thomas v. Blackard*, 2 F.4th 716, 721 (7th Cir. 2021) (mentioning that "a lack of drinking water can constitute a separate Eighth Amendment violation").

Under the facts presented, Plaintiff's lack of drinking water does not establish a constitutional deprivation without additional proof showing he was denied access to all beverages for an extended period. *See Tesch v. Cnty. of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998) (forty four hours without water, but provided

9

beverages with meals three times daily is not a constitutional deprivation); *see also Williams v. Collins*, No. 14 C 5275, 2015 WL 4572311, at *4 (N.D. Ill. July 29, 2015) (holding a disabled inmate's allegations that he was denied assistance in "obtaining drinking water" for "less than two full days" was *de minimis* and did not state a claim for relief). Plaintiff also does not contend that he suffered any harm between the time he noted the inoperable sink and his transfer the next day.

Furthermore, "[u]nder the subjective standard, it is not enough to show that a state actor should have known of the danger his actions created. Rather, a plaintiff must demonstrate that the defendant had actual knowledge of impending harm which he consciously refused to prevent." *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996). Plaintiff makes no such showing. Instead, Plaintiff acknowledges Defendant Livingston effected his transfer from cell 838 the next day. Thus, the record does not establish or permit the inference that Defendants Bryan, Edens, Livingston, and Wilson were deliberately indifferent to Plaintiff's concerns regarding the inoperable sink in cell 838.

## 2

Plaintiff described cell 836 as a concrete box with a steel front door with perforated holes and plexiglass running along the top of the door. (Pl. Dep. Doc. 120-1 at 23:14-22.) Upon entering cell 836, Plaintiff observed the walls, ceiling, toilet, and bed were covered in an orange substance, which appeared to be mace sprayed during an August 8, 2019, cell extraction. (*Id.* at 22:2-7.) Plaintiff admits being provided a cup containing a small amount of diluted liquid weekly, which he characterized as water, but no rags, sponge, or scrubber to assist in sanitizing cell 836. (*Id.* at 26:8-14, 27:3-9.) Plaintiff stated that the provided liquid alone was insufficient to clean the mace, and he had no access to his property for thirty days. Plaintiff experienced sneezing, coughing, burning and watery eyes, and itchy and

burning skin during this time. (*Id*. at 29:22-23.) Plaintiff remained in cell 836 for fifty-eight days before being transferred on October 8, 2019.

In *Gray v. Hardy*, the plaintiff stated that birds flew through the prison, leaving their droppings on the floors and walls, and that the cells were infested with mice, ants, spiders, and other pests. 826 F.3d 1000, 1004 (7th Cir. 2016). The plaintiff received only one towel, which was replaced every eight months; he did not have access to mops, brooms, or buckets; and he was given only "some watered-down disinfectant spray." *Id*. The district court granted summary judgment in favor of the defendant, but the Seventh Circuit reversed, stating, "[W]e are satisfied that [the plaintiff] has shown enough to avoid summary judgment on his claim that the myriad infestations and his lack of access to adequate cleaning supplies, taken together, deprived him of the basic human need of rudimentary sanitation in violation of the Eighth Amendment." *Id*. at 1005.

Defendants Bryan, George, Kline-Lohmar, Montes De Oca, and Wilson contend that because Plaintiff received cleaning supplies weekly, they are entitled to summary judgment, asserting that "reasonable measures taken to avert known risks will insulate a prison official from Eighth Amendment liability, even if those measures proved unsuccessful." *Bagola v. Kindt*, 131 F.3d 632, 646 (7th Cir. 1997). However, *Gray* instructs that merely providing inmates with some cleaning supplies is insufficient. Prison officials must provide adequate cleaning supplies. *See Morris v. Lay*, 331 F.App'x 417, 419 (7th Cir. 2009) (noting that an inmate must also have access to an adequate amount of cleaning agent as opposed to just "at one point some cleaning agent").

Plaintiff testified that because cell 836 was in segregation, a nurse would personally pass out medication, escorted by corrections officials who could see the walls "painted orange" with OC spray. (Pl. Dep., Doc. 120-1 at 29:5-10.) Construing the facts presented and the reasonable inferences in Plaintiff's favor, if the

11

conditions were as Plaintiff claims, Defendants, given their proximity to cell 836, would in all probability have had the requisite state of mind to satisfy the subjective component. *See Isby v. Clark*, 100 F.3d 502, 505-06 (7th Cir. 1996) ("[I]f the conditions were truly as dreadful as [the plaintiff] claims [dried blood, feces, urine and food on the walls], the defendants, given their closeness to the situation, would in all probability have had the requisite state of mind to satisfy the subjective component of an Eighth Amendment claim.").

Plaintiff's undisputed account of the small amount of weekly cleaning product and description of the conditions of cell 836 creates an issue of fact as to the adequacy of the liquid cleanser provided. Thus, the Court denies summary judgment to Defendants Bryan, George, Kline-Lohmar, Montes De Oca, and Wilson on this issue.

However, Defendant Evans is entitled to summary judgment on Plaintiff's claim regarding water seeping through the ventilation system in cell 836 because Plaintiff does not present evidence regarding the subjective component of his conditions of confinement claim. *See Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (holding that a plaintiff "'must show only that [the] defendants' responses to [his complaints] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs.'" *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (quoting *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (citation omitted)).

Plaintiff states he spoke to Defendant Evans about the leaks, but does not state what he told Evans and, more importantly, Evans' response, if any, that would establish or support an inference that Evans consciously disregarded an excessive risk to Plaintiff's health or safety.

12

**3**

Defendants Bernstein, Diaz, Edens, Eskins, George, Kline-Lohmar, and Wilson contend they are entitled to summary judgment on the remainder of Plaintiff's claims regarding his consecutive transfers to cells 728 on October 8, 2019; 730 on October 9, 2019; 527 on November 27, 2019; and 532 on January 24, 2020, because Plaintiff presents no evidence that established or permits the inference that they were deliberately indifference to the conditions of his confinement as alleged. The Court agrees.

In this regard, the Court notes a prevailing theme that encompasses the remainder of Plaintiff's allegations regarding his cell placements, which occurred as follows: Plaintiff is assigned to a cell, he complains to specific Defendants about the cell conditions, and thereafter, he is moved to a new cell based on his complaints.

For example, after Plaintiff transferred to cell 728 on October 8, 2019, he complained to Defendants Edens, George, Kline-Lohmar, and Wilson about an overflowing sink and was transferred the next day, October 9, 2019. Similarly, Plaintiff moved to cell 532 on January 24, 2020, where he remained until January 26, 2020. During his two-day stay, Plaintiff claimed that the toilet did not flush properly. In response, Defendant Diaz attempted unsuccessfully to correct the defect, and Defendants Bernstein and Eskins submitted a work order and notified the shift supervisor.

When Plaintiff moved into cell 730, he noted water leaking occasionally into the cell. After Plaintiff was splashed with water from a leaking pipe, Defendant Diaz submitted a work order. Although Plaintiff contends that the water splash caused rashes on his neck, he spoke to a nurse who opined that Plaintiff looked fine. *See Gray*, 826 F.3d at 1006 (concluding that a plaintiff may meet his burden by presenting evidence of physical injury "'that a reasonable doctor or patient would

find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'") (quoting *Hayes*, 546 F.3d at 523).

As noted with Defendant Evans *supra*, Plaintiff fails to provide any evidence that establishes or permits the reasonable inference that Defendants Edens, George, Kline-Lohmar, and Wilson were deliberately indifferent to Plaintiff's general claims regarding the ventilation system and structural issues in cell 730 or to his complaints to Defendants Diaz, Eskins, and Bernstein about the water leakage in cell 527. *See Jones v. Anderson*, 116 F.4th 669, 680 (7th Cir. 2024) ("'[I]t is not enough to show that a state actor should have known of the danger his actions created. Rather, a plaintiff must demonstrate that the defendant had actual knowledge of impending harm which he consciously refused to prevent.'") (quoting *Tesch*, 157 F.3d at 476 (internal quotation marks omitted)).

## D

### 1

Plaintiff asserts that between August 2019 and January 2020, he had to defecate or urinate on several occasions during his outside recreation time because of the lack of toilet facilities and the inability of corrections staff to hear his requests to return inside to use a bathroom. Plaintiff complained to Defendants Drysdale, Edens, and Evans about the lack of toilet access in the outdoor recreational area and requested that Pontiac staff check more frequently to determine whether anyone needed to use the toilet, which they denied.

"[C]ase law recognizes long-term deprivations of modern toilet facilities as potential Eighth Amendment violations." *White v. Knight*, 710 F. App'x 260, 261 (7th Cir. 2018). However, "no [known] decision . . . suggests that the temporary imposition, during lockdowns, of a once-every-two-hours limit on the use of a toilet violates society's minimum standards of decency under *Rhodes* or yields a

serious risk of causing post-traumatic stress disorder." *Id.* at 262; *see also Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 677 (N.D. Ill. 2009) (holding that the plaintiff's lack of bathroom access for three to five hours was not a constitutional violation).

Furthermore, although Plaintiff was undoubtedly aware after the first instance that bathroom facilities were unavailable and corrections officials were unreachable, he chose to relieve himself on several occasions during his recreation time. Although it may have been uncomfortable for Plaintiff to wait until he returned to his cell to relieve himself, "[o]ccasional discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994) (quoting *Rhodes*, 452 U.S. at 347.) Thus, Defendants Drysdale, Edens, and Evans are granted summary judgment on Plaintiff's lack of recreational pod toilet access.

**2**

Plaintiff's general speculation that the showers available to him at Pontiac from August 2019 to January 2020 could have possibly contained black mold and were clogged falls short of the deprivation required to establish a violation under the Eighth Amendment prohibition of cruel and unusual punishment. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim."); *see also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (where the Seventh Circuit held that an inch or two of water in the shower due to an allegedly faulty drain, even when the plaintiff had an infected toe, did not rise to a constitutional violation).

Despite Plaintiff's belief that the shower conditions caused rashes, boils, pimples, and athlete's foot, he does not present evidence establishing causation. Even if Plaintiff did provide such proof, Plaintiff does satisfy the subjective prong of his burden by demonstrating that Defendants George, Kline-Lohmar, Montes De Oca, or Wilson had a sufficiently culpable state of mind. *See Haywood v.*

*Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (concluding that to satisfy the subjective component of a conditions of confinement claim, a plaintiff "must show only that defendants' responses … were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs.'").

### 3

Defendants Bryant, George, Kline-Lohmar, Montes De Oca, and Wilson assert that Plaintiff's observation of a variety of pests, without more, does not establish a constitutional deprivation.

A prolonged pest infestation may be considered a deprivation sufficient to establish an Eighth Amendment violation. *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). Whether the infestation is sufficiently serious depends on the duration of the infestation and the amount of harm suffered. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (holding that the plaintiff "alleging the mere presence of a laundry list of pests, without more, [was] not sufficient to state a constitutional claim" where the court was "left in the dark as to how extensive the infestations [were] and how the pests affect[ed] him.")

Plaintiff testified that he resided in a cell house where field mice, ants, spiders, centipedes, and birds appeared, but neither had contact with these creatures nor did they cause him any harm. Thus, on this record, Defendants Bryant, George, Kline-Lohmar, Montes De Oca, and Wilson are entitled to summary judgment on Plaintiff's pest allegation.

### 4

Claims of "incessant" noise in prisons may suffice to support an Eighth Amendment conditions-of-confinement claim. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (citing *Williams v. Boles*, 841 F.2d 181, 183 (7th Cir. 1988)); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (Loud noises may rise to an

Eighth Amendment violation where they amount to a denial of "the minimal civilized measure of life's necessities.").

Plaintiff states that he spoke to Defendants Kline-Lohmar, George, and Bryan regarding what he described as the "weaponization" of nonstop noise by his fellow inmates, which does not, without more, establish a constitutional violation. *See Hoeft v. Kasten*, 393 F. App'x 394, 396 (7th Cir. 2010) (concluding that to survive summary judgment, a plaintiff must offer more evidence than simply generic assertions that the noise was "excessively loud and almost constant").

## IV

In light of the foregoing, the Court Orders as follows:

1) Defendants' Motion for Summary Judgment (Doc. 120) is GRANTED in part and DENIED in part.

2) Summary Judgment is denied as to Plaintiff's conditions of confinement claims against Defendants Bryan, George, Kline-Lohmar, Montes De Oca, and Wilson for the conditions described in cell 836. As to all remaining allegations, Defendants' Motion for Summary Judgment is granted.

3) The Clerk of the Court is DIRECTED to terminate Larry Bernstein, Luis Diaz, Downie Drysdale, Kevin Edens, Kimberly Eskins, Lance Evans, David Jackson, David Lindsay, and Ryleigh Livingston as parties.

4) Plaintiff's Motions for Status (Docs. 129, 130) are MOOT.

5) The Court refers this case to Magistrate Ronald L. Hanna for a settlement conference. If the parties do not reach a settlement, this case will be set on the Court's trial calendar. The Court directs the Clerk of the Court to notify Judge Hanna's chambers of the referral.

*It is so ordered.*

Entered: August 25, 2025

s/Jonathan E. Hawley
U.S. District Judge